FILED
APR 17 2003
DAVID W. DANIEL, CLERK
US DISTRICT COURT
E. DIST. N. CAROLINA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
CASE NO: 4:01-CV-100-H(3)

ANA ROSA BELTRÁN BENITEZ, )
AZUCENA HERNÁNDEZ CAMACHO, )
MAGDALENA CUEVAS HIGUERA, )
SANDRA SANDOVAL ARMENTA, EVA )
LUZ NUÑEZ ALCANTAR, MARÍA )
MARTHA NUÑEZ ALCANTAR, )
Individually and on behalf of )
themselves and all others )
similarly situated, and DALIA )
BURGOS SALAZAR, AGRIPINA MONTOYA )
CHAPARRO, and FRANCISCA )
FERNANDEZ VALENZUELA, )
individually )
)
        Plaintiffs )
)
v. )
)
SEA SAFARI, LTD. and W.E. )
BATEMAN, III, ROSE DAVIS, and )
TAMMY COTA, )
)
        Defendants. )
_____)

## FINAL JUDGMENT AND CONSENT ORDER

This is an action brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201 et seq., and the North Carolina Wage and Hour Act ("NCWHA"), N.C.Gen.Stat. §§95-25.1 et seq. Plaintiffs Ana Rosa Beltrán Benitez, Magdalena Cuevas Higuera, Azucena Hernández Camacho, Sandra Sandoval Armenta, Eva Luz Nuñez Alcantar, María Martha Nuñez Alcantar, Dalia Burgos Salazar, Agripina Montoya Camacho, and Francisca Fernández Valenzuela have alleged, *inter alia*, that they were employed by the defendants, who failed to pay the plaintiffs and the class they have been certified to represent all their wages when those wages were due at the wage rates described in 29 U.S.C. §§206(a) and 207(a)(1) and those overtime and minimum wage rates required by the Fair

1

Labor Standards Act during the time that defendants employed the named plaintiffs and the class of persons they have been certified to represent. In an effort to resolve this action without further litigation, and to limit the expense and time involved in proceeding to Judgment in this action, the plaintiffs and defendants have mutually stipulated to the entry of this Order Approving Class Settlement, and the Court, therefore, upon consideration of the record herein and being fully advised of the premises,

ORDERS and DECREES:

(1) The Court has jurisdiction over the named plaintiffs, the class the named plaintiffs have been certified to represent, defendants, and of the subject matter of this action. The named plaintiffs and defendants have waived entry of the findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure.

(2) Under Rule 71, Fed.R.Civ.P., and by consent of the parties to this action, the terms of this Consent Order shall be subject to enforcement by any person(s) who would receive any benefit from a full and complete execution of its terms.

(3) The terms of the settlement set forth in the Notice to Class Members are hereby approved as a reasonable and equitable compromise of the claims against defendants in this litigation. The Court finds that they were achieved through extensive, arms-length bargaining between the named plaintiffs and defendants, and are in the best interests of the named plaintiffs and the defendants as well as the members of the statutory class of persons that the named plaintiffs have been certified to represent under 29 U.S.C. §216(b).

(4) The Defendants shall pay to or on behalf of the Plaintiffs and their attorneys, the North Carolina Justice and Community

Development Center and Robert J. Willis, Esq. ("Plaintiffs' Attorneys"), the total sum of Fifty-Three Thousand and No/100 Dollars ($53,000.00) which represents the total monetary settlement amount to be paid by Defendants and which is current as to all claims for all individuals who filed, and did not withdraw, Consents to Sue as of July 31, 2002. Defendants shall deliver all settlement proceeds to Plaintiffs' attorneys, and Plaintiffs shall release Defendants in exchange for multiple payments to be made into Plaintiffs' attorney's trust account, pursuant to the following payment schedule:

| **Payment No.** | **Payment Due** | **Payment Amount** |
|---|---|---|
| 1 | November 1, 2002 | $10,000.00 |
| 2 | December 1, 2002 | $10,000.00 |
| 3 | January 1, 2003 | $10,000.00 |
| 4 | February 1, 2003 | $10,000.00 |
| 5 | March 1, 2003 | $13,000.00 |

Plaintiffs' attorneys shall not distribute such proceeds until such time as the entire amount due the Plaintiffs is received by Plaintiffs' attorneys and a Stipulation of Dismissal with Prejudice has been filed with the Court in this Action. In addition, no proceeds shall be distributed to a Plaintiff until such time as that Plaintiff has signed a release as specified in Paragraph 9. Plaintiffs' attorneys shall not provide the release of a Plaintiff to the Defendants until the entire settlement amount due to that particular Plaintiff has been fully deposited into Plaintiffs' attorney's trust account.

(5) The Plaintiffs shall use a portion of the funds described in ¶(4) above to pay each member of the class that the named plaintiffs have been certified to represent the sum of $3.87 **(Three Dollars and**

**Eighty-Seven Cents)** for each week of work listed in the time records that defendant Sea Safari, Ltd. provided to counsel for the plaintiffs as work performed by that class member as an hourly worker.

(6) The Plaintiffs shall use a portion of the funds described in ¶(4) above to pay each member of the class that the named plaintiffs have been certified to represent to pay the additional sum of $15.45 **(Fifteen Dollars and Forty-Five Cents)** for each week of work listed in the time records that defendant Sea Safari, Ltd. provided to counsel for the plaintiffs as work performed by that class member as a piece worker.

(7) The Plaintiffs shall use a portion of the funds described in ¶4 above to pay each member of the class that the named plaintiffs have been certified to represent the additional sum of 80% of the amount each class member repaid to defendants for their visa/transportation costs, if that amount was repaid in full, according to the records that defendant Sea Safari, Ltd. Provided to counsel for the plaintiffs

(8) In addition to any payments that they would receive pursuant to the terms of ¶¶(4)-(7) above, counsel for the named Plaintiffs shall use a portion of the funds described in ¶(4) above to pay each of the nine (9) named plaintiffs an additional $250.00 **(Two Hundred and Fifty Dollars and No Cents)** as compensation for the time and effort they have spent pursuing this action.

(8) The Plaintiffs is authorized to divert and use up to $500.00 **(Five hundred dollars and no cents)** to fund the costs of providing notice to the class certified by the Court's Order. Plaintiffs represent that Notification shall include at least one mailing to each class member for whom the North Carolina Justice and Community

4

Development Center has a valid home address.

(9) The remainder of the **$53,000.00 (Fifty-Three Thousand Dollars and No Cents)** sum specified above shall be retained by Robert J. Willis, Esq. and the North Carolina Justice and Community Development Center as attorney's fees and litigation costs.

(10) Any payments described in ¶¶(4)-(7) above of this Notice which cannot be made to any member of the class that the named plaintiffs have been certified to represent in the 2 years period immediately following the Court's approval of the terms of the settlement in this matter shall be donated to in the name of Robert J. Willis to the Farm Labor Research Project, Inc. That entity is a private, non-profit corporation organized under 501(c)(3) of the Internal Revenue Code that does advocacy and training work for Latino farmworkers and workers.

(11) No payment shall be made by Plaintiff's Counsel to any member of the class certified under 29 U.S.C. §216(b) unless and until that person provides Plaintiffs' Counsel with some reasonable form of photographic identification and has signed a release of all claims against defendants that forever bars that person from asserting any claim which could have been asserted by being a member of, joining or consenting to join one or both of the classes certified by the Court in this action.

(12) Defendants shall not hold the passports or visas of any person employed by one or more of the defendants named in the caption of this Order.

(13) Defendants shall provide each worker recruited in Mexico with the form attached as Exhibit A, designed by Plaintiffs' attorneys, that accurately explains the amount the workers will have

5

to pay for visas and travel, the average weekly total earnings by H-2B workers over the course of each of the previous three (3) seasons and the average number of days per week worked by H-2B workers in each of the previous three (3) years, the terms and conditions of employment, and a statement that each worker has the right to quit even if that worker has not paid off debts they owe to the company. This form shall be provided in English or Spanish, depending on the language of the worker. This form shall be provided to each worker in the hometown of each worker prior to paying any recruitment or visa fees or incurring any expense related to travel to the United States. For workers recruited in the United States, the form shall be provided to them at the time of recruitment. Any information provided to the workers regarding the average total weekly earnings for previous years or the average number of days per week worked shall not be considered a contract with the employees, or a representation by Defendants that the workers shall have the same amount of earnings or work during the season for which they are hired.

(14) Defendants shall post a sign by the time clock that explains that each worker is required to punch in and out for lunch. Defendants shall not automatically deduct time from any workers' time card for lunch or other breaks, but shall pay each worker for all clocked-in time actually worked. Workers shall be advised before they leave Mexico to come to the United States that the time clock policy will be enforced, and that two infractions could lead to their termination.

(15) As the terms "retaliation" and/or "retaliatory action" are used in 29 U.S.C. §215(a)(3) and/or N.C.Gen.Stat. §95-241(a), the

6

Defendants shall not retaliate against any person or employee for instituting or causing the Action to be instituted.

(16) Defendants shall record all announcements made by supervisory/management personnel over the company microphone and such recordings shall be maintained in company files for a period of three (3) years from the date of recording.

(17) Supervisory/management personnel of Defendant Sea Safari, Ltd. shall not threaten, curse at, or verbally or physically intimidate any employee.

(18) Defendants shall provide training for supervisory/management personnel regarding workers' rights and employer responsibilities within three (3) months from the date the Agreement is fully-executed. Such training shall be provided by Thomas Harris or a trainer mutually acceptable to Plaintiffs and Defendants.

(19) Supervisory/management personnel of Defendant Sea Safari, Ltd. shall not impose or enforce a curfew at company housing, restrict employees from leaving the housing, prevent employees from having visitors at the housing, or prevent employees from speaking with, telephoning, or interacting with non-Sea Safari employees. However, Defendants reserve the right to ask an employee, or any other person, to leave company housing if he or she is violating any local, state or federal laws, or abusing housing provided by Defendants. Any eviction shall be done in accordance with North Carolina state law. Sea Safari, Ltd., shall post a sign designed by Plaintiffs' attorneys (attached as Exhibit B) near the entrance to each house or unit rented by Sea Safari, Ltd. workers.

(20) Sea Safari, Ltd. and W. E. Bateman, III shall not file bankruptcy from the date Defendants execute the Settlement Agreement

7

Case 4:01-cv-00100-H   Document 66   Filed 04/17/03   Page 7 of 19

until at least ninety (90) days after the last payment is made pursuant to Paragraph No. 4 herein.

(21) Supervisory/management personnel shall not initiate, solicit money for, or benefit financially from any raffle. Supervisory and/or management personnel shall not threaten, force, or encourage employees to participate in any raffle.

(22) Supervisory/management personnel shall not solicit money from employees for any gifts or celebrations to benefit themselves or other supervisory/management personnel.

(23) Plaintiffs shall not institute, attempt to institute, or pursue in any other manner, any legal proceedings or other claim(s) against Defendants arising out of or in any other manner related to the matters alleged in this Action.

(24) This shall be a full and final compromise of disputed claims as to both questions of liability and as to the nature and extent of any damages, and neither the Settlement Agreement, nor the terms and provisions contained herein, shall be construed as an admission of liability by any party to this Agreement, and any such liability is expressly and unequivocally denied.

(25) Other than as set forth above, Plaintiffs shall be solely responsible for all taxes, insurances, penalties, and other charges, if any, which may be owed to or assessed by governmental agencies as a result of the payments made to them and their counsel. Plaintiffs further agree to indemnify and hold harmless the Defendants and their attorneys from any claims, demands, deficiencies, levies, assessments, judgments or recoveries by any governmental authority asserted against the Defendants because of the Plaintiffs' failure to pay applicable taxes.

(26) Other than as set forth above, all parties hereto shall bear their own costs and attorneys fees in connection with the disputes and the claims raised in the Action which are the subject of this Agreement.

(27) This Agreement shall be construed and governed in accordance with the laws of the State of North Carolina. Any action relating to this Agreement shall be instituted and prosecuted only in the United States and, specifically, Wake County, North Carolina.

(28) This Agreement shall be binding upon and shall inure to the benefit of the successors, assigns, heirs, and personal representatives of the parties hereto.

(29) No later than thirty (30) calendar days after the date on which the defendants have complied with all of the provisions of ¶¶(4)-(7) above of the proposed settlement set forth above in this Notice, plaintiffs shall: (A) file a joint stipulation of dismissal with prejudice of all claims for relief against defendants that they have alleged in the original complaint that they have filed in this action for both their individual and the claims of the persons that they sought to represent in their original Complaint and as this Court has certified them to represent under 29 U.S.C. §216(b), Fed.R.Civ.P., against defendants; and (B) prior to their receipt of any compensation that is due them under the terms of the proposed settlement, sign a standard release of all claims alleged in this lawsuit without any confidentiality clause or any release of any claim for worker's compensation benefits that are presently pending against defendants in the manner required by ¶(8) above of this Order.

(30) No funds payable under the terms of this proposed settlement agreement shall be paid to any individual current or former employee of

9

one or more of the defendants to settle any claim they may have against defendants unless and until: (A) each such current or former employee presents a signed and properly notarized release of claim for any wage claims against defendants under the NC Wage and Hour Act and the Fair Labor Standards Act that the current or former employee may have for any period of employment by one or more of the defendants in the time period on or after June 29, 1998 but before the date stamped at the top of page one of this Notice to Class approved by the Court. Said release of claim shall not contain any confidentiality clause or release of any pending worker's compensation claim(s) that any current or former named plaintiff or class member may have against one or more of the named defendants. However, in the event that no such release(s) are obtained from one or more of the nine (9) named plaintiffs or members of the statutory class certified under 29 U.S.C. §216(b), the terms of this settlement, as described above in this Order, shall continue in full force and effect with respect to the unpaid or undistributed sums for each such worker(s) referred to in ¶¶ 4-7 of this Notice that are to be distributed as provided in ¶(8) above of this Notice.

(31) Within thirty (30) days after the plaintiffs complete the monetary distribution described in ¶¶(4)-(7) and (10) above of this Notice, the named plaintiffs shall file with the Court a final accounting, supplemented by receipts or canceled checks of the funds distributed to the §501(c)(3) non-profit corporation pursuant to ¶(7) above of this Order.

(32) Any putative member of the statutory class of persons that the Court certified the named plaintiffs to represent under 29 U.S.C. §216(b) that did not file a written Consent to Sue with the Court giving the named plaintiffs that person's permission to allow them to

10

represent that person in this FLSA statutory class action against defendants pursuant to 29 U.S.C. §216(b) by July 30, 2002 is not and shall not have any right to be a member of the statutory class that the named plaintiffs have been certified to represent under 29 U.S.C. §216(b) against defendants nor shall that person have any right to receive any benefits from the settlement of that same statutory class action under the FSLA against defendants. However, any person who did file with the Court a written Consent to Sue pursuant to 29 U.S.C. §216(b) prior to July 30, 2002 is and shall be bound by the terms of the class settlement of the FLSA law claim against defendants that the Court has approved in this Order pursuant to 29 U.S.C. §216(b). As such, that person is and shall be forever barred from asserting any claim against defendants which could have been asserted if that person had not given the named plaintiffs that person's permission to allow them to represent you in the statutory class that the Court certified under 29 U.S.C. §216(b) against defendants to the extent allowed by law.

(33) Any member of the class that the named plaintiffs have been certified to represent may make a claim and receive the amount of money that they are entitled to receive pursuant to ¶¶(4)-(7) above of this Notice. To make that claim, they must contact the North Carolina Justice and Community Development Center within two (2) years of the date that this Order was filed by the Court, and provide a signed release of all claims against defendants on a release form that may be obtained from the North Carolina Justice and Community Development Center. Any class member or named plaintiff making a claim must send their name, a legible **copy** of some reasonable form of photo identification card or other photographic identification they may

11

possess, their full name, and their present mailing address and/or telephone number to the North Carolina Justice and Community Development Center. Claims will not be paid until after the North Carolina Justice and Community Development Center has received a signed release of all claims against defendants in the manner and to the extent called for by ¶(11) above of this Order. Failure to make that that claim within the two (2) year time period shall result in the permanent loss of that named plaintiff(s) and/or that class member's right to receive the settlement funds that they are entitled to receive pursuant to the provisions of ¶¶(4)-(7) above of this Order, and shall entitle Plaintiffs' counsel to use said funds to make the donation(s) described in ¶(10) above of this Order.

(34) Payment of the Settlement Amount to any named plaintiff and/or class member and that person's signature on the release described in ¶(8) above shall constitute a full release as against defendants of all claims asserted or which could have been asserted in the Lawsuit against defendants by the named plaintiffs and by any member of the class which that member have been certified to represent, whether or not such person has elected to opt-in or opt-out of the class, to the extent allowed by law. This Consent Order resolves all matters between the named plaintiffs, the classes they have been certified to represent against defendants, and defendants as stated in the plaintiffs' Complaint filed in the above-captioned action.

This the 17th day of April, 2003.

United States District Judge

# Terms and Conditions of Employment at Sea Safari

To: Sea Safari Applicants
From: W.E. Bateman, III
Date: (Date)

This sheet outlines the terms and conditions of your employment as a crab processing worker at the Sea Safari, Ltd. plant in Belhaven, North Carolina. This is not a contract between you and Sea Safari. It is simply an explanation of what the work has been like for other workers in the past and what the work either will be or may be like for you this year at Sea Safari. We are giving you this information so you can make an informed decision whether you want to travel to North Carolina to work for Sea Safari.

## Type and Location of Work

You will be working as a crab processing worker at the Sea Safari plant, 346 E. Front Street, Belhaven, North Carolina. The work will begin on (date) and end on (date).

## The Pay in Previous Seasons

During the 2002 season, the workers who traveled from Mexico to work at Sea Safari worked an average of ____ weeks and an average of ____ hours per week. The workers earned an average of $(net amount) per week each week they worked at Sea Safari. Some weeks they earned more than this and some weeks they earned less, but their average take-home pay was $(net amount) per week. Some people earned less than this amount each week in 2002, and some earned more.

During the 2001 season, the workers who traveled from Mexico to work at Sea Safari worked an average of ____ weeks and an average of ____ hours per week. The workers earned an average of $(net amount) per week each week they worked at Sea Safari. Some weeks they earned more than this and some weeks they earned less, but their average take-home pay was $(net amount) per week. Some people earned less than this amount each week in 2001, and some earned more.

During the 2000 season, the workers who traveled from Mexico to work at Sea Safari worked an average of ____ weeks and an average of ____ hours per week. The workers earned an average of $(net amount) per week each week they worked at Sea Safari. Some weeks they earned more than this and some weeks they earned less, but their average take-home pay was $(net amount) per week. Some people earned less than this amount each week in 2000, and some earned more.

This information is being provided to you for your information. We are not guaranteeing that you will work the same number of hours or weeks this year that workers worked in previous years, nor that you will earn the same amount of money workers earned in previous years.

The pay rate for the (current year) season is as follows. If you are a piece worker, you will earn a piece rate of $____ per pound for lump crab, $____ per pound for jumbo crab and $____ per pound for backfin. Whether you are a piece worker or an hourly worker, you are guaranteed to earn at least $5.15 per hour for each hour you work up to 40 hours in a work week. If you work

EXHIBIT A

more than 40 hours in that week, you will be paid a rate of 1 ½ times your hourly rate for those hours. If you were earning the minimum wage of $5.15 per hour, your hourly rate for each hour you work more than 40 hours in a work week would be $7.73.

### Your Debt to Sea Safari

Sea Safari is willing to pay for your visa and your bus trip to North Carolina and to loan you money for food for your trip. When you get to North Carolina, you will be expected to repay the company. You will owe Sea Safari $____ for the visa, $____ for the bus fare, and $____ for food. That will be a total debt of $____. You can repay the debt on your own schedule. It will not be taken out of your paycheck. You are not required to pay back a certain amount each week and you do not have to make payments at a certain time. It is up to you how and when you pay back your debt.

### Your Housing Costs

You may live anywhere you like while you work for Sea Safari. If you live in a Sea Safari house, rent of $____ per week will be deducted from your paycheck. You will live in a house with other workers and will be expected to share a bedroom with at least one other person. The North Carolina Migrant Housing Act guarantees you at least 50 square feet of space per person in your bedroom. There may not be air conditioning in the house.

If you live in a Sea Safari house, you may come and go as you choose. You may have visitors if you choose. How and when the house is cleaned is up to you and the other tenants. You do not have to inform Sea Safari personnel if you want to leave the house for any reason, unless you are moving out permanently.

### Your Benefits

Sea Safari, Ltd. has worker's compensation insurance that covers you if you have an accident at work or if you become sick because of your work. This insurance will pay for your medical bills and will pay you for the time you miss from work if you have to be absent for more than a week because of your work-related accident or illness.

If you have an accident outside of work or become sick for reasons unrelated to your work, Sea Safari does not have insurance to pay for your medical bills or for the time you miss from work.

### Your Passport and Social Security Card

Your passport and Social Security card are your property and your responsibility. The company will not hold these items for you.

### Your Right to Quit

You have the right to leave your employment with Sea Safari if you want to, even if you have not paid your debt to the company.

# Términos y Condiciones del Empleo para Sea Safari

**A:** Candidatos del empleo para Sea Safari
**De:** W.E. Bateman, III
**Fecha:**

Esta hoja explica los términos y las condiciones de su empleo como trabajador/a de jaiba en la planta de Sea Safari, Ltd., en Belhaven, Carolina del Norte. Esto no es un contrato entre usted y Sea Safari, sino una explicación de cómo fué el trabajo para otros trabajadores en el pasado y cómo es ó cómo puede ser el trabajo para usted este año. Le estamos dando esta información así que usted puede tomar una decisión informada si usted desea viajar a Carolina del Norte para trabajar para Sea Safari.

## Tipo y Ubicación del Trabajo

Usted trabajará como obrero/a en la planta de Sea Safari, 346 E. Front Street, Belhaven, Carolina del Norte. El trabajo comenzará (fecha) y terminará (fecha).

## El Pago de Temporadas Pasadas

Durante la temporada 2002, los trabajadores que viajaron de México para trabajar para Sea Safari trabajaron un promedio de ____ semanas y un promedio de ____ horas por semana. Los trabajadores ganaron un promedio de $(net) por semana cada semana que trabajaron para Sea Safari. Algunas semanas ganaron más que esto y algunas semanas ganaron menos, pero su paga neta era $(net) por semana. Algunos ganaron menos que esta cantidad cada semana en 2002, y algunos ganaron más.

Durante la temporada 2001, los obreros que viajaron de México para trabajar para Sea Safari trabajaron un promedio de ____ semanas y un promedio de ____ horas por semana. Los trabajadores ganaron un promedio de $(net) por semana cada semana que trabajaron para Sea Safari. Algunas semanas ganaron más que esto y algunas semanas ganaron menos, pero su pago neto era $(net) por semana. Algunos ganaron menos que esta cantidad cada semana en 2001, y algunos ganaron más.

Durante la temporada 2000, los obreros que viajaron de México para trabajar para Sea Safari trabajaron un promedio de ____ semanas y un promedio de ____ horas por semana. Los trabajadores ganaron un promedio de $(net) por semana cada semana que trabajaron para Sea Safari. Algunas semanas ganaron más que esto y algunas semanas ganaron menos, pero su paga neta era $(net) por semana. Algunos ganaron menos que esta cantidad cada semana en 2000, y algunos ganaron más.

Este aviso se le está proporcionando a usted para su información. No estamos garantizando que usted trabajará el mismo número de horas ó de semanas en este año como los obreros que trabajaron en años anteriores, ni que usted ganará la misma cantidad de dinero que ganaron los trabajadores en años anteriores.

El pago para la temporada de (año actual) está como sigue. Si usted trabaja a destajo, usted ganará un índice de destajo de $ ____ por cada libra de cangrejo del terrón, $____ por cada libra de cangrejo enorme y $____ por cada libra de backfin. Si usted es

obrero/a a destajo ú obrero/a por hora, a usted le será garantizado ganar por lo menos $5.15 por hora, para cada hora que usted trabaje hasta 40 horas en una semana de trabajo. Si usted trabaja más de 40 horas en la semana, a usted le será pagado el índice de tiempo de 1 ½ del pago por hora por cada hora extra. Si usted ganara el salario mínimo de $5.15 por hora, el pago por hora para cada hora que usted trabaje por más de 40 horas en una semana de trabajo serían $7.73.

### Su Deuda a Sea Safari

Sea Safari está dispuesto a pagar su visa y su viaje del bus a Carolina del Norte y a prestarle dinero para la comida para su viaje. Cuando usted llegue a Carolina del Norte, usted tendrá que devolverle el dinero a la compañía. Usted deberá $\_\_\_\_ a Sea Safari para la visa, $\_\_\_ para el precio del bus, y $\_\_\_ para la comida. Ésa será una deuda total de $\_\_\_. Usted puede pagar la deuda en su propio horario. No le será descontada de su cheque. No se le requiere devolverles cierta cantidad cada semana y usted no tiene que hacer pagos con ningun tipo de interés en ningún momento. Le corresponde a usted cómo y cuándo usted pagará su deuda.

### Sus Costos de Vivienda

Usted puede vivir donde quiera mientras que usted trabaja para Sea Safari. Si usted vive en una casa de Sea Safari, $\_\_\_ por semana le será deducido de su cheque para la renta. Usted vivirá en una casa con otros trabajadores y se esperará que comparta un dormitorio con por lo menos una otra persona. El "Migrant Housing Act" de Carolina del Norte le garantiza por lo menos 50 pies cuadrados de espacio por persona en su dormitorio. Puede no haber aire acondicionado en la casa.

Si usted vive en una casa de Sea Safari, puede venir e ir cuando usted elige. Usted puede tener visitantes si usted elige. Usted y los otros arrendatarios pueden decidir cómo y cuándo se limpiara la casa. Usted no tiene que informar al personal de Sea Safari si usted desea salir de la casa por cualquier razón, a menos que usted se esté moviendo hacia fuera permanentemente.

### Sus Beneficios

Sea Safari, Ltd. tiene seguro de indemnización por accidentes del trabajo si usted tiene un accidente ó si usted se enferma debido a su trabajo. Este seguro pagará sus cuentas médicas y le pagará por el tiempo que usted falte al trabajo si usted tiene que estar ausente por más de una semana debido a su accidente ó enfermedad relacionada con el trabajo.

Si usted tiene un accidente fuera del trabajo ó se enferma por razones sin relación a su trabajo, Sea Safari no tiene seguro para pagar sus cuentas médicas o por el tiempo que usted falte al trabajo.

### Su Pasaporte y Tarjeta de Seguro Social

Su pasaporte y tarjeta de seguro social son de su propiedad y su responsabilidad. La compañía no guardará estas cosas para usted.

**Su Derecho de Dejar su Empleo**

Usted tiene el derecho de dejar su empleo con Sea Safari si usted desea, incluso si usted no ha pagado su deuda a la compañía.

## Your Rights While Living in this House

**While you are renting this house from Sea Safari, you have certain rights:**

- You have the right to have visitors, if you choose.

- You have the right to come and go from the house whenever you please.

- You have the right to turn out the lights and/or go to sleep at whatever hour you choose.

- You have the right to make telephone calls to whomever you choose whenever you choose to do so.

- You have the right to decide when you want to clean the house, and to purchase your own cleaning supplies. You do not have to pay Sea Safari to purchase cleaning supplies for you.

You also have the responsibility to follow all local, state, and federal laws related to being a tenant and living in rented housing.

**Your housing should have been inspected by the North Carolina Department of Labor.**

**The law says your housing should have the following things:**

- Smoke detectors
- First aid kit
- Stove with one burner per 5 (five) people and a minimum of 2 (two) burners
- Refrigerator with .75 cubic feet of space per person
- At least 50 square feet of space per person in the bedrooms
- Beds above the floor, at least 36 inches apart
- Sink with hot and cold running water
- No mice, rats, roaches, or insects
- Screens on the windows and doors
- One bathroom for each 15 (fifteen) people of the same sex
- Toilet paper in the bathrooms
- Enough hot water so everyone can take a hot shower
- One shower for every 10 (ten) people
- One laundry tub for every 30 (thirty) people
- Heat if the temperature falls below 50 degrees or if you live in the house between September 1 and May 15
- Garbage containers, emptied regularly

**If you are having any problems with your housing, you can call the North Carolina Justice and Community Development Center for free assistance at (919) 856-2144.**

EXHIBIT B

## Sus Derechos Mientras Vive en Esta Casa

**Mientras que usted está alquilando esta casa de Sea Safari, usted tiene ciertos derechos:**

- Usted tiene el derecho de tener visitantes, si usted elige.
- Usted tiene el derecho de venir y de ir de la casa cuando quiera.
- Usted tiene el derecho de apagar las luces y/o de ir a dormir en cualquier hora que usted elija.
- Usted tiene el derecho de hacer llamadas telefónicas a quien quiera, y cuando quiera.
- Usted tiene el derecho de decidir cuando usted desea limpiar la casa, y de comprar sus propios materiales de la limpieza. Usted no tiene que pagar a Sea Safari para comprar los materiales de la limpieza para usted.

Usted también tiene la responsabilidad de seguir todas las leyes locales, estatales, y federales relacionadas a ser un arrendatario y de residir en una vivienda alquilada.

**Su vivienda debe haber sido examinada por el Departamento del Trabajo de Carolina del Norte.**

**La ley dice que su vivienda debe estar proveída con lo siguiente:**

- Detectores de humo
- Botiquín de primeros auxilios
- Estufa con un quemador para cada 5 (cinco) personas y un mínimo de 2 (dos) quemadores
- Refrigerador con .75 pies cúbicos de espacio para cada persona
- Por lo menos 50 pies cúbicos de espacio para cada persona en las recámaras
- Camas encima del piso, separados por lo menos 36 pulgadas.
- Fregadero con agua corriente, caliente y fría
- Libre de ratones, ratas, cucarachas, e insectos
- Mosquiteros en las ventanas y en las puertas
- Un baño para cada 15 (quince) personas del mismo sexo
- Papel higiénico en los baños
- Suficiente agua caliente para que todos puedan tener una ducha caliente
- Una ducha para cada 10 (diez) personas
- Una (avadora para cada 30 (treinta) personas
- Calefacción si la temperatura está bajo de 50 grados Fahrenheit, ó si usted vive en la casa entre el 1 de septiembre y el 15 de mayo
- Botes de la basura, tirados regularmente

**Si usted tiene cualquier problema con la vivienda, puede llamar al Centro de Justicia y Desarrollo Comunitario de Carolina del Norte para ayuda gratis al (919) 856-2144.**